40 F.3d 1250
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Lecia A. FULLER, Petitioner,
v.
DEPARTMENT OF the NAVY, Respondent.
 No. 94-3190.
 United States Court of Appeals, Federal Circuit.
 Oct. 26, 1994.
 
 Before ARCHER, Chief Judge, MICHEL and SCHALL, Circuit Judges.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 Lecia Fuller petitions for review of the December 22, 1993 decision of the Merit Systems Protection Board (Board), No. SF0752920784-I-1, sustaining her removal from her position as a Materials Handler at a Naval ship yard in San Diego, California. The Board concluded that the Department of Navy sustained its charge that Fuller engaged in a physical altercation that warranted her removal and that her actions were not justified by self-defense. We affirm.
 
 DISCUSSION
 A. Background
 
 2
 The Navy removed Fuller for "engaging in a physical altercation resulting in injury to a co-worker." The charge stated that Fuller used a "lethal weapon" to "deliberately" cut a co-worker, Danielle Black, who had attacked Fuller during working hours. Fuller justified her actions as self-defense.
 
 
 3
 In the events leading up to the altercation, Black assumed Fuller had given her phone number to Black's husband, who also worked at the same materials warehouse, because she had found Fuller's phone number in her husband's wallet and listed several times on her telephone bill. Black also observed Fuller being "overly friendly" with her husband at the work site. Based on her observations, Black became suspicious that her husband and Fuller were having an affair. Black threatened Fuller over the telephone and also scratched the word "bitch" into Fuller's front door.
 
 
 4
 On the day of the altercation Fuller was working in a crane when Black confronted her. Black climbed into the compartment of the crane to ask Fuller whether she had given her phone number to Black's husband. Black also called Fuller a "whore" and a "slut". Fuller denied giving Black's husband her phone number and questioned if Black "was insecure about something" and asked, "Are you jealous of me?" Without responding, Black grabbed Fuller's throat and began choking her. In the ensuing fight, Fuller seriously injured Black by inflicting several serious cuts to her face with a box cutter knife, a tool used to open boxes. At the end of the altercation, both women were beside the crane, being restrained by co-workers.
 
 
 5
 The Administrative Law Judge (AJ) found that Fuller could not have retreated when first confronted by Black because there were no stairs leading up to the crane, which was three feet off the ground, except at the opening blocked by Black. The AJ also found that Fuller never had a chance to retreat during the altercation because Black never stopped choking her as they struggled. According to the AJ, Fuller simply reached for the closest tool while Black was strangling her and did not purposefully choose a box knife.
 
 
 6
 Based on these findings, the AJ concluded that Fuller reasonably believed that she was in immediate danger of bodily harm and that she used only reasonably necessary force to resist the attack. Thus, the AJ found that Fuller had properly acted in self-defense during the conflict. The AJ reversed the Navy's removal action and ordered the Navy to reinstate Fuller with back pay.
 
 
 7
 The Board reversed the AJ in a split opinion, concluding that the removal was reasonable because the undisputed facts do not support Fuller's self-defense claim. The Board found that Fuller was "not without fault in causing the altercation" because she chose to confront Black in the crane with questions implying Black may be insecure or jealous. In addition, the Board found that Fuller used excessive force against Black during the altercation.
 
 B. Analysis
 
 8
 The Board is free to substitute its judgment, either upon the facts or upon the law, for that of the AJ, with deference to the AJ upon any issues of credibility. Connolly v. Dep't of Justice, 766 F.2d 507, 512 (Fed.Cir.1985). We must affirm decisions of the Board unless they are: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988). That the decision of the Board differs from the decision of the AJ does not alter the requirement that this court evaluate the Board's final decision under the substantial evidence standard. Jackson v. Veterans Admin., 768 F.2d 1325, 1330 (Fed.Cir.1985).
 
 
 9
 A person is entitled to defend herself when it would appear to a reasonable person under similar circumstances, that she is in immediate danger of bodily harm. However, she is justified in using only such force as appears to be reasonably necessary to resist the unlawful attack. Davis v. Freels, 583 F.2d 337, 340-41 (7th Cir.1978). Factors to consider in determining whether the level of force was reasonably necessary include the amount of force exerted, the means or instrument used, the manner or method of applying the force, and the circumstances under which the force was applied. Burton v. Waller, 502 F.2d 1261, 1276 (5th Cir.1974). Based on our application of these factors to the undisputed facts, we conclude the Board's finding that Fuller used excessive force is supported by substantial evidence.
 
 
 10
 First, in her counter-attack on Black, Fuller used a box cutter knife, a tool containing a retractable blade, honed on both sides, which can be extended about an inch. Fuller must have had the knife extended during the altercation with Black, making the instrument extremely destructive and potentially lethal.
 
 
 11
 Second, Fuller's manner of applying force to defend herself supports a finding of excessive force. Fuller used a knife to slash Black, who was unarmed, across the face several times. Every cut that Black received was on her face, suggesting that Fuller aimed deliberately for Black's face rather than flailed her arms until Black released the choke-hold. Moreover, by striking at Black's face and near her eyes, Fuller caused more dangerous injuries than she would have by striking at Black's arms, legs or torso. Dr. Robert Hasson, who examined Black immediately following the altercation, characterized Black's injuries as typically showing "aggressive behavior" by an attacker. Thus, the facts support a finding that Fuller used a lethal weapon to deliberately and aggressively disfigure the face of an unarmed person. Such actions clearly support a finding that Fuller used excessive force in defending herself.
 
 
 12
 The amount of force used by Fuller in the counter-attack, evidenced by the extent of Black's injuries compared to those of Fuller, also supports the Board's finding of excessive force. Dr. Hasson testified that he observed "numerous long biased lacerations of both cheeks and the nose reaching subcutaneous layer," the tissue layer under the skin. Black required numerous sutures for these very deep cuts. Moreover, Black had several facial scars resulting from the cuts inflicted by Fuller, including a scar extending from below her right eyebrow to the left side of her nose, a scar extending from the base of her nose across her left cheek and ending below the left corner of her lip, and a three-inch scar extending from her left sideburn to her jaw. In contrast, the emergency medical technician who attended to Fuller about one-half hour after the altercation reported that her neck appeared "unremarkable."
 
 
 13
 Finally, the circumstances surrounding the altercation support the Board's finding of excessive force. Although Black is physically larger than Fuller, Commander David Knowles, the agency deciding official, testified that Fuller was better able than Black to perform more strenuous work for longer periods of time and that Fuller's greater physical strength and stamina likely would cancel the disparity in size between the two women. Thus, the fact that Black is physically larger than Fuller does not justify the amount of force used by Fuller.
 
 
 14
 For these reasons, the Board's finding that the fear Fuller had for her safety while Black was choking her did not justify the forced used is supported by substantial evidence. By using a knife to make numerous and deep cuts in Black's face, Fuller used more force than a reasonable person would view as necessary to resist Black's attack. Because the Board's finding that Fuller used excessive force in fending off Black's attack dispositively precludes Fuller from claiming self-defense, we need not address the Board's finding that Fuller provoked the attack.
 
 
 15
 Given it is undisputed that Black and Fuller engaged in an altercation while on duty, and that Fuller's conduct is not excused by her claim of self-defense, the agency has sustained its charge. Moreover, we must defer to the agency's choice of penalty unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion. Villela v. Air Force, 727 F.2d 1574, 1576 (Fed.Cir.1984). Because the Navy generally imposes removal for a first offense of fighting at the workplace, and because such fighting significantly harms the efficiency of the agency, we affirm the removal action.