NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**REO DALONTA NELSON,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2018-1880

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-17-0840-I-1.

---

Decided:  June 11, 2019

---

REO DALONTA NELSON, Accokeek, MD, pro se.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JOSEPH H. HUNT, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* LOURIE and DYK, *Circuit Judges.*

PER CURIAM.

Reo Dalonta Nelson appeals from the final decision of the Merit Systems Protection Board ("the Board") affirming the agency's decision to suspend him for 60 days and to demote him from a GS-13 to a GS-12 position. *See Nelson v. Dep't of Transp.*, No. DC-0752-17-0840-I-1, 2018 WL 400522 (M.S.P.B. Jan. 12, 2018); S.A. 1–15. For the reasons that follow, we *affirm*.

BACKGROUND

Nelson was employed in the position of Protective Service Specialist, GS-1801-13, in the Office of Intelligence, Security and Emergency Response (S-60) since about November 2009. S.A. 54–55. This position is located in the Department of Transportation ("DOT"), Office of the Secretary, and requires a Special Deputation administered by the United States Marshal Service. On October 27, 2016, Nelson was interviewed in connection with an investigation into his failure to pay for parking in the DOT underground parking garage. The investigation revealed that Nelson failed to pay for parking on 455 occasions over a three-year period. This resulted in lost parking revenue estimated to be between $4,725 and $5,366. Nelson was placed on paid administrative leave effective October 27, 2016, and his Special Deputation was terminated.

On June 29, 2017, Donna O'Berry, the Deputy Director of DOT's Office of Intelligence, Security and Emergency Response, issued a "Notice of Proposed Suspension and Demotion" containing two charges. S.A. 36–43. The first charge was 34 specifications of "Conversion of Government Property," which included 455 instances where Nelson used the parking garage without paying (the "conversion charge"). S.A. 37–40. The second charge was the "Inability to Perform the Essential Functions of Your Position" (the "demotion charge"). S.A. 40. Because his position of Protective Service Specialist required a Special Deputation, which was revoked upon the initiation of the investigation,

he could no longer perform the essential functions of his position. O'Berry also considered Nelson's time in Federal civilian service and military service, as well as his cooperation in reimbursing the DOT for the fees owed. But based on the seriousness of the offense and the fact that he could not continue in his current job without a Special Deputation, she determined that a 60-day suspension and a demotion to GS-12 was an appropriate penalty.

Nelson responded to the proposed actions by presenting an oral reply to the Deciding Official, Michael Lowder. After reviewing the available information, Lowder concluded in a decision dated August 28, 2017, that the charges from O'Berry's proposal notice were supported by a preponderance of the evidence, which warranted the imposition of the 60-day suspension and demotion. For the conversion charge, Lowder found it "less than creditable that [Nelson] forgot to pay the necessary parking fees on 450 separate incidents." S.A. 46. For the demotion charge, Lowder found it was supported because Nelson was no longer able to perform the essential functions of his position due to his lack of a Special Deputation. Pursuant to *Douglas*, Lowder then considered mitigating factors such as Nelson's "lack of previous discipline, outstanding performance, and cooperation with [Office of Inspector General] investigators." S.A. 47 (citing *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 331–33 (1981)). Lowder acknowledged that although Nelson had paid the fees he owed, he had "concerns about whether [Nelson] would have made these payments without the investigation and threat of a disciplinary action." *Id.* Lowder thus concluded that there were sufficient grounds to sustain the 60-day suspension and demotion.

Nelson appealed to the Board. The administrative judge ("AJ") determined that the agency had proven by the preponderance of the evidence that Nelson's actions of "continuing to use the agency's parking facilities for almost three years with full knowledge that he was required to pay

for parking and was failing to do so establishes the necessary intent to sustain the agency's charge." S.A. 5. The AJ next determined that because Nelson no longer possessed a Special Deputation, he was unable to perform the essential functions of his original position and sustained the second charge. *Id.* The AJ finally concluded that the penalty was reasonable in light of the serious offense of knowing conversion of government property, even considering mitigating factors such as Nelson's remorse regarding his conduct and full restitution. S.A. 6–7. The AJ's decision became the final decision of the Board on February 16, 2018 because Nelson chose not to petition for review by the full Board.

Nelson appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The court will normally defer to the administrative judgment unless the penalty exceeds the range of permissible punishments specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Villela v. Dep't of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984) (quoting *Power v. United States*, 531 F.2d 505, 507 (Ct. Cl. 1976)).

Nelson argues that, although he is "not denying the allegations contained in the agency's charges," the penalty he received for the unpaid parking tickets was "too harsh." Appellant's Br. 3; *see also* S.A. 57 ("The Appellant is not challenging the merits of the Agency's charges in his disciplinary action decision dated August 28, 2017."). He also

contends that the Board failed to consider mitigating factors such as his genuine remorse, his lack of a prior disciplinary record, and his length of service. Appellant's Br. 4–5. Based on this, Nelson believes he should have received a "lesser form of discipline than a 60-day suspension." *Id.* at 5.

The government responds that the Board took into account all the necessary facts when making its decision. Regarding the first charge, the government argues that Nelson testified that he knew he was required to pay for parking. His "'actions of continuing to use the agency's parking facilities for almost three years with full knowledge that he was required to pay for parking and was failing to do so,' demonstrate[s] the necessary intent to convert agency property for his use." Appellee's Br. 12 (quoting S.A. 5). Regarding the second charge, Nelson stipulated that the position as Protective Service Specialist requires a Special Deputation, which he no longer held. *See* S.A. 5; *see also* S.A. 57–58. According to the government, the Board properly sustained the second charge because Nelson could no longer perform the duties of the Protective Service Specialist without his Special Deputation. The government also argues that the Board appropriately considered all of the record evidence and the relevant *Douglas* factors and correctly concluded that the penalty was reasonable.

We agree with the government that the Board properly sustained the two charges. Under 18 U.S.C. § 641, it is unlawful for a person to "knowingly convert[] to his use . . . any . . . thing of value of the United States or any department or agency thereof . . . ." With respect to the conversion charge, the AJ considered Nelson's stipulations that he knew he was required to pay for parking, which it found supported a violation under § 641. With respect to the demotion charge, Nelson again stipulated that the Protective Service Specialist position requires a Special Deputation,

which he no longer held, and thus the AJ properly sustained this charge.

We also agree with the government that the Board properly determined that the penalty was reasonable. To determine a penalty's reasonableness, the agency must balance the relevant *Douglas* factors, although it need not mechanically consider each and every factor. *See Webster v. Dep't of Army*, 911 F.2d 679, 686 (Fed. Cir. 1990) (citing *Douglas*, 5 M.S.P.B. at 331–33). The AJ considered all of the record evidence in making her determination. First, the AJ credited Lowder's testimony and found that Lowder considered the applicable *Douglas* factors including the seriousness of the offense and the fact that Nelson's "misconduct outweighed his positive work record and the fact that he had no prior disciplinary record." S.A. 6. The AJ next considered Nelson's approximately 13 years as a Federal civilian employee and prior military service and that he made "full restitution to the agency for the amount owed although this was done only after [Nelson] became aware of the agency's investigation." *Id.* The AJ also reviewed Nelson's testimony and determined that while Nelson seemed "genuinely remorseful about his conduct," "violation of a criminal statute" was "serious and warrant[s] a significant penalty." S.A. 7. Finally, the AJ noted that it is "well settled" that a law enforcement officer is "subject to a higher standard of conduct than other Federal employees." *Id.* The AJ thus concluded that the penalty was reasonable. S.A. 8.

Based on the AJ's comprehensive review of all the record evidence, we conclude that the decision is based on substantial evidence, is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. We thus affirm the Board's decision.

CONCLUSION

We have considered Nelson's remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm*.

**AFFIRMED**

COSTS

No costs.